# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2018

Lyle W. Cayce
Clerk

————

Nos. 17-50088 & 17-50102

————

IVAN ARNOLD, an individual, on behalf of himself and all others similarly situated,

>    Plaintiff - Appellee

v.

HOMEAWAY, INCORPORATED,

>    Defendant - Appellant

and

DEIRDRE SEIM, Individually, and on behalf of all others similarly situated,

>    Plaintiff - Appellant

v.

HOMEAWAY, INCORPORATED, A Delaware Corporation,

>    Defendant - Appellee

————————

Appeals from the United States District Court
for the Western District of Texas

————————

Before KING, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Plaintiffs Ivan Arnold and Deirdre Seim filed separate lawsuits against

Nos. 17-50088 & 17-50102

Defendant HomeAway, Inc.[1]  In each case, HomeAway sought to compel arbitration.  Concluding that both Seim and Arnold are bound to arbitrate threshold arbitrability questions, we REVERSE the judgment of the district court in Arnold's case and AFFIRM the judgment in Seim's.  We REMAND both cases with instructions to compel arbitration.

## I

HomeAway owns and operates several websites that facilitate short-term "vacation" rentals.  HomeAway's sites connect homeowners and property managers with travelers who book their properties online.  Arnold and Seim are both HomeAway subscribers who list properties on HomeAway's websites.

Arnold filed a putative class-action complaint alleging, chiefly, that HomeAway's February 2016 imposition of service fees for travelers was contrary to its prior representations and resulted in a variety of state-law violations.  HomeAway argues that its April 2016 Terms and Conditions govern Arnold's action.  As relevant here, the April 2016 Terms contain the following provisions:

> **Any and all Claims will be resolved by binding arbitration, rather than in court**, except [the user] may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims [the user] assert[s] against [HomeAway], [its] subsidiaries, users or any companies offering products or services through [HomeAway] (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before [the user] accepted these Terms, regardless of whether prior versions of the Terms required arbitration.
>
> **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including statutory damages, attorneys'**

---

[1] Although these appeals are not consolidated, given the similarities between these two cases, which are on appeal from the same district court, we resolve both in a single opinion.

2

**fees and costs), and must follow and enforce these Terms as a court would.**

Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules.

HomeAway moved to compel arbitration in reliance on these provisions. HomeAway argued that, pursuant to the April 2016 Terms and the AAA Rules referenced therein, the parties had agreed to arbitrate threshold questions including "the existence, scope, or validity of the arbitration agreement." Arnold opposed the motion to compel, arguing that the September 2015 Terms and Conditions, which do not contain arbitration requirements, governed. He also claimed that, even if the April 2016 Terms applied, HomeAway's authority to modify any terms or conditions without providing notice rendered the arbitration provision illusory and unenforceable under Texas law.

The district court denied HomeAway's motion to compel arbitration. The court found that the April 2016 Terms applied because Arnold renewed a subscription for one of his HomeAway accounts in May 2016. However, the court held that, under Texas law, the arbitration provision was illusory because HomeAway had reserved the unilateral right to avoid arbitration at any point without notice. The court did not address HomeAway's contention that the April 2016 Terms contained a delegation clause requiring Arnold to arbitrate threshold questions regarding the arbitration provision. HomeAway filed a timely notice of appeal, as is authorized by the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 16(a)(1)(B).

Although it resulted in a different outcome, the history of Seim's case is substantially similar. Seim also challenges HomeAway's imposition of traveler fees. HomeAway moved to compel arbitration under the February 2016 Terms and Conditions, which contained the same arbitration provision the April 2016

Terms did. As in Arnold's case, the district court did not address HomeAway's contention that a purported delegation clause required Seim to arbitrate threshold questions about the arbitration provision. However, the district court, applying Kentucky law, granted HomeAway's motion to compel arbitration. The court concluded that when Seim renewed a subscription for one of her properties and agreed to the February 2016 Terms, she agreed to arbitrate all claims against HomeAway, including any claims predating the February 2016 Terms. The district court entered a final judgment of dismissal, and Seim timely appealed.

## II

We review a ruling on a motion to compel arbitration de novo. *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016). The district court's factual findings in support of such ruling are reviewed for clear error. *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017).

## A

In Arnold's case, our analysis will proceed as follows: First, we consider whether Arnold is challenging the formation of his contract with HomeAway or the validity of that contract. Second, we address the putative delegation provision. Finally, we consider the breadth of Arnold's challenge to the arbitration provision. This inquiry leads us to conclude that Arnold is bound to arbitrate threshold questions relating to the arbitration provision.

When a party seeks to compel arbitration based on a contract, the first, and perhaps most obvious, question for the court is whether there is a contract between the parties at all. *See Kubala*, 830 F.3d at 201–02. In conducting this inquiry, we distinguish between "validity" or "enforceability" challenges and "formation" or "existence" challenges. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). "[W]here the 'very existence of a contract'

containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003)). Though the difference between formation and validity may be unclear at the margins,[2] the Supreme Court has suggested that the category of arguments that question the very existence of an agreement include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." *Buckeye Check Cashing*, 546 U.S. at 444 n.1 (citations omitted).

Arnold contends that the arbitration provision in the April 2016 Terms is illusory under Texas law.[3] On its surface, an illusoriness challenge would appear to be in the nature of an existence challenge; illusory promises imply lack of adequate consideration, which affects contract formation. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt. a (1981) ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise."); 3 WILLISTON ON CONTRACTS § 7:11 (4th ed.) ("Where no consideration exists, and is required, the lack of consideration results in no contract being formed."). However, Arnold does not dispute the existence of a contract with HomeAway governed by the April 2016 Terms. Instead, he argues that the arbitration provision is an illusory promise on HomeAway's part and that, under Texas law, this renders the arbitration provision unenforceable. *See, e.g., J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 236

---

[2] *See generally* George A. Bermann, *The "Gateway" Problem in International Commercial Arbitration*, 37 YALE J. INT'L L. 1, 32–36 (2012) (discussing treatment of various validity and/or formation issues).

[3] For reasons made clear below, we find it unnecessary to address the conflicts-of-law question briefed by the parties as, even assuming Arnold is correct in his assertion that Texas law governs, he is bound to arbitrate.

(Tex. 2003). Under our precedent, Arnold's argument is in the nature of a validity challenge.

In *Lefoldt for Natchez Regional Medical Center Liquidation Trust v. Horne, L.L.P.*, 853 F.3d 804, 813–17 (5th Cir. 2017), we explained that Mississippi's "minutes rule," which requires that contracts with public entities be memorialized in the minutes of the entity's board meetings, sometimes operates as a rule of contract formation and sometimes as a rule of enforceability. With regard to one contract at issue in *Lefoldt*, the parties did not dispute that there was a contract, but the party resisting arbitration argued that the minutes rule "either foreclose[d] the possibility that there was an agreement to arbitrate or preclude[d] enforcement of the arbitration provision." *Id.* at 814. We relied on a Mississippi Supreme Court opinion stating, with respect to the minutes rule, that "the entire *contract* need not be placed on the minutes. Instead, it may be enforced where 'enough of the terms and conditions of *the contract* are contained in the minutes for determination of the liabilities and obligations of *the contracting parties* without the necessity of resorting to other evidence.'" *Id.* at 812 (cleaned up). This statement, we held, "unmistakably mean[t] that in some instances, the minutes rule is not a matter of contract formation but instead is a rule preventing consideration of evidence of the terms of the contract other than what is set forth in the minutes." *Id.* In other words, we concluded that the minutes rule was operating as an enforceability argument. *See id.*

The Texas law at issue here is similar to the minutes rule at issue in *Lefoldt* inasmuch as the existence of the parties' agreement is separate from the enforceability of the arbitration provision. *See In re AdvancePCS Health LP,* 172 S.W.3d 603, 607 (Tex. 2005) (observing that defendant had "established the existence of an arbitration clause governing [the] dispute,"

Nos. 17-50088 & 17-50102

and going on to consider "affirmative defense[s]," including illusoriness). The Texas Supreme Court has stated that

> an arbitration provision that is part of a larger underlying contract may be supported by the consideration supporting the underlying contract. . . . But such an arbitration provision remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration.

*Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). Like the minutes rule in *Lefoldt*, Arnold's allegation that a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge. *See* 853 F.3d at 814. And so, we move on to consider the parties' arguments concerning the purported delegation clause. *See Kubala*, 830 F.3d at 202.

Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. *See Rent-A-Center*, 561 U.S. at 68–70. However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). We have held that, generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such "clear and unmistakable" evidence. *See, e.g.*, *Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co.*, 687 F.3d 671, 674–75 (5th Cir. 2012). Although the April 2016 Terms plainly stipulate that the AAA Rules will govern arbitration, Arnold resists the application of the *Petrofac* rule, suggesting that Texas law controls the question of what constitutes clear and unmistakable evidence of parties' intent to arbitrate threshold questions. However, the Supreme Court has explained that the clear-and-unmistakable standard is a requirement of its own creation, framing it as a "qualification" to

7

the application of "ordinary state-law principles that govern the formation of contracts." *Kaplan*, 514 U.S. at 944. Thus, to the extent our precedent diverges from Texas law, we follow our own interpretation of the "clear and unmistakable" threshold.[4]

Arnold's attempts to otherwise distinguish *Petrofac* are unpersuasive. First, he argues that *Petrofac* and *Cooper v. WestEnd Capital Management*, L.L.C., 832 F.3d 534, 536 (5th Cir. 2016), which followed *Petrofac*, are distinguishable because both cases involved negotiated contracts between sophisticated parties, whereas this case presents a consumer contract of adhesion. As an initial matter, this circuit has already applied the *Petrofac* rule in a case in which there was unequal bargaining power between the parties—a national chain and locally owned drugstores—despite apparently recognizing the adhesive nature of the contracts at issue. *See Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014). We have also applied the rule to an individual investor without mention of his level of sophistication. *See Cooper*, 832 F.3d at 546.

Moreover, as explained by the Supreme Court, the clear-and-unmistakable standard concerns "the parties' *manifestation of intent*, not the agreement's *validity*." *Rent-A-Center*, 561 U.S. at 69 n.1. Accordingly, in *Rent-A-Center*, the Court rejected the plaintiff's claim that, although the text of the parties' agreement was clear and unmistakable with respect to the parties' intent to delegate, the plaintiff's agreement to that text was not because the arbitration provision was unconscionable. *Id.* While Arnold does not use the term "unconscionable," the premise of his argument is essentially the same as

---

[4] We do not mean to imply that state law is wholly irrelevant to the clear-and-unmistakable analysis. Arnold's contention is that the substance of the threshold itself is governed by Texas law, a proposition squarely refuted by the Supreme Court's explanation in *Kaplan*. *See* 514 U.S. at 944. He does not rely on any Texas principle of contract formation or construction.

that of the plaintiff in *Rent-A-Center*, namely that *his* intent to delegate is unclear because he did not, in fact, assent to the purported delegation provision. *See id.* We therefore cannot adopt Arnold's proposed policy-based exceptions to the *Petrofac* rule.[5]

Arnold next argues that *Petrofac* and its progeny are distinguishable because he was never provided the AAA rules. But, again, for present purposes, we are concerned with whether the parties manifested intent to arbitrate threshold questions, not whether Arnold's agreement to incorporate the AAA rules was valid. *See id.* *Petrofac* has already answered the basic question of textual interpretation presented here: an agreement to arbitrate under the AAA rules constitutes express incorporation of those rules, which constitutes clear and unmistakable evidence of the parties' intent. *See Petrofac*, 687 F.3d at 674–75.

Arnold's final argument is that the text of the April 2016 Terms is distinguishable from the contracts at issue in *Petrofac* and its progeny because those cases did not involve "an arbitration clause that expressly reserved some categories of claims for judicial resolution rather than arbitration." The April 2016 Terms state that "[a]ny and all Claims will be resolved by binding arbitration, rather than in court, except [the user] may assert Claims on an individual basis in small claims court if they qualify." (emphasis omitted). Arnold does not contend that his claims qualify for disposition in small claims

---

[5] We note that, to date, no circuit court has adopted Arnold's proposed approach. As the Ninth Circuit observed, "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent [to delegate] do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (citing *Petrofac*, 687 F.3d at 675; *Republic of Arg. v. BG Grp. PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009)).

court. The mere fact that an arbitration provision does not apply to every possible claim does not render the parties' intent to delegate threshold questions about that provision less clear. *See Crawford Prof'l Drugs*, 748 F.3d at 262–63 (applying *Petrofac* where parties argued that their claims fell outside the scope of the arbitration provision). We do not foreclose that a contract might incorporate the AAA rules but nonetheless otherwise muddy the clarity of the parties' intent to delegate. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 494 (5th Cir. 2017) ("It is not the case that any mention in the parties' contract of the AAA Rules trumps all other contract language."). However, Arnold's arguments do not persuade us that we have such a contract before us.

Because the April 2016 Terms expressly incorporate the AAA rules, the parties have clearly and unmistakably demonstrated their intent to delegate. *See Petrofac*, 687 F.3d at 674. We will therefore proceed to the final piece of our analysis: determining the breadth of Arnold's challenge to the arbitration provision.

The Supreme Court has held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing*, 546 U.S. at 449. This is true even when the "contract as a whole" is an arbitration agreement, and the "arbitration clause" at issue is an agreement to delegate threshold questions to an arbitrator. *See Rent-A-Center*, 561 U.S. at 71–72.

In *Rent-A-Center*, the plaintiff filed an employment-discrimination claim against his former employer, who then moved to compel arbitration based on an arbitration agreement containing a purported delegation provision. 561 U.S. at 65. The plaintiff opposed arbitration, arguing that the arbitration agreement was unconscionable and therefore unenforceable under state law. *Id.* at 66. The defendant contended, based on the delegation provision, that

the arbitrator had exclusive authority to resolve any dispute about the enforceability of the agreement. *Id.* The Court agreed, explaining that, under its precedents, if a party challenges the validity "of the precise agreement to arbitrate at issue, the federal court must consider the challenge," but unless the party resisting arbitration has "challenged the delegation provision specifically, [a court] must treat it as valid[,] . . . leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 71–72. The Court concluded that the plaintiff focused his unconscionability argument on the arbitration agreement as a whole, rather than the delegation clause in particular, and therefore the question of the arbitration agreement's validity was for the arbitrator to decide. *Id.* at 74–76. Thus, *Rent-A-Center* holds that, in the absence of a challenge specifically to a delegation clause, validity challenges must be sent to an arbitrator. *See id.* at 71–72.

Arnold's contention is that the arbitration provision as a whole is unenforceable under Texas law. Because his challenge is not specific to the delegation clause, Arnold must present it to an arbitrator. *See Rent-A-Center*, 561 U.S. at 71–72. Having concluded that there is a contract between the parties that contains a putative arbitration provision, that the parties have agreed to delegate threshold questions about the arbitration provision to an arbitrator, and that Arnold does not specifically challenge the validity of the delegation clause, we need not reach the remainder of the issues briefed by the parties.

**B**

Under the preceding principles, the resolution of Seim's appeal is straightforward. Seim states in her opening brief that when one of her subscriptions "came up for renewal in March 2016, . . . it came under the February [2016] Terms." She also asserts that she "does not dispute that the

arbitration provision applied to [one of her properties], even retroactively."[6] Thus, Seim concedes that the February 2016 Terms "contains an arbitration clause" that "covers some set of claims." *IQ Prods.*, 871 F.3d at 349. Accordingly, she is challenging only the scope of the arbitration provision. *See id.*

Because the February 2016 Terms contain the same delegation clause as the April 2016 Terms, they too contain clear and unmistakable evidence of the parties' intent to delegate gateway questions like scope to an arbitrator. *See Petrofac*, 687 F.3d at 674. Seim's only argument to the contrary is that "the difficulty that the parties, lawyers and courts have in deciding which 'contract' even applies shows the lack of clear and unmistakable intent to arbitrate." But this argument, at most, suggests lack of clarity as to the scope of the arbitration provision. Because there is an agreement to arbitrate some set of claims, a delegation provision, and no specific challenge to that provision, Seim's additional arguments are for an arbitrator to resolve. Thus, in Seim's case, the district court was correct to order arbitration but should not have assessed threshold questions itself. Consistent with our opinion, the parties may revisit these issues in arbitration.

**\*\*\***

For these reasons, we REVERSE the judgment of the district court in No. 17-50088 and REMAND with instructions to grant the motion to compel arbitration, and we AFFIRM the judgment of the district court in No. 17-50102 and REMAND with instructions to grant the motion to compel arbitration.

---

[6] In light of this clear concession, and because her opening brief challenges only the application of the February 2016 Terms to four of her five properties, while repeatedly acknowledging that she agreed to the February 2016 Terms, we will not address the inconsistent arguments raised in her reply brief. *Cf. Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 434 n.12 (5th Cir. 2002) (finding plaintiffs abandoned their claims "by their clear representations to the district court that they were not alleging any violations of federal rights").