**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-3393, 18-3399
_____


ERICKA RICHARDSON; LUIS A. SILVA,
On behalf of themselves and all other similarly situated persons


v.


COVERALL NORTH AMERICA, INC.; SUJOL, LLC, DBA Coverall of Southern, NJ;
ABC CORPS. 1-10; JANE & JOHN DOES 1-10

SUJOL, LLC, DBA Coverall of Southern, NJ,
Appellant in Appeal No. 18-3393

COVERALL NORTH AMERICA, INC.,
Appellant in Appeal No. 18-3399
_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:18-cv-00532)
District Judge: Hon. Michael A. Shipp
_____


Argued: November 20, 2019


Before: CHAGARES, MATEY, and FUENTES, *Circuit Judges.*


(Filed: April 28, 2020)


Norman M. Leon          [ARGUED]
DLA Piper
444 West Lake Street, Suite 900
Chicago, Illinois 60606

David S. Sager
Amanda L. Camelotto
DLA Piper
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
        *Counsel for Appellant Coverall North America, Inc.*

Justin D. Santagata            [ARGUED]
Kaufman Semeraro & Leibman
Two Executive Drive, Suite 530
Fort Lee, NJ 07024
        *Counsel for Appellant Sujol, LLC, DBA Coverall of Southern, NJ*

Ravi Sattiraju
Anthony S. Almeida
Sattiraju & Tharney
50 Millstone Road
Building 300, Suite 202
East Windsor, NJ 08520

Shannon Liss-Riordan
Adelaide Pagano            [ARGUED]
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

Anthony L. Marchetti, Jr.
Marchetti Law, P.C.
900 North Kings Highway, Suite 306
Cherry Hill, NJ 08034
        *Counsel for Appellees Ericka Richardson and Luis Silva, individually*

_____

OPINION[*]
_____

_____

        [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Ericka Richardson and Luis Silva each wanted to open a commercial cleaning business. So each bought a franchise from Coverall North America, Inc. (CNA) through Sujol, LLC d/b/a Coverall of Southern New Jersey (Sujol). But disagreements followed the signed agreements, and Richardson and Silva filed a putative class action alleging they are the Defendants' employees, not independent contractors, under New Jersey law. We do not address who has the better argument, because the contracts both delegate that authority to an arbitrator. So we will reverse the District Court's Order in part and vacate in part and remand for further consideration.

## I. BACKGROUND

### A. The Agreements

CNA sells commercial cleaning services. It operates a franchise business system through geographically designated territories. Sujol, known as a "master franchisee," owns one of these territories and entered into agreements with Richardson (in 2016) and Silva (in 2005) to operate cleaning businesses. CNA is not a named party to either the Richardson or Silva agreement (collectively "the Agreements"). Rather, CNA has an agreement with Sujol allowing Sujol to sell franchises using CNA's trademarks and operating system.

Problems arose in 2017, as Richardson and Silva began to question their relationship with Sujol and, as a result, the fees due under the Agreements. So they filed a putative class action in the Superior Court of Middlesex County, New Jersey, claiming that while the

3

Agreements label them as "independent contractors," they are really employees under New Jersey law. (App. at 38–48 (citing N.J. Stat. Ann. § 43:21-19(i)(6)).) Plaintiffs alleged that Defendants had violated the New Jersey Wage Payment Law (NJWPL), N.J. Stat. Ann. § 34:11-4.1 et seq., by allegedly misclassifying them as independent contractors, charging them for a job, and taking unlawful deductions from their wages. (App. at 38–48.) CNA and Sujol removed the matter to federal court, and then moved under Section 3 of the Federal Arbitration Act (FAA) to stay the proceedings in favor of arbitration. (App. at 7.)

## B.     The District Court's Interpretation of the Agreements

The District Court considered both the who and the what: whether the parties agreed to delegate questions of arbitrability to an arbitrator and, in Richardson's case, whether CNA could enforce the arbitration clause. First, the District Court found the incorporation of the American Arbitration Association (AAA) Commercial Arbitration Rules in Silva's agreement did not satisfy the clarity needed for delegation, at least with an "unsophisticated party." Applying New Jersey law, the District Court also held that the arbitration agreement did not cover Silva's NJWPL claims. Second, the District Court found Richardson's agreement with Sujol delegated arbitrability questions to the arbitrator. But the court determined that CNA could not invoke the arbitration clause. Timely appeals by Sujol and CNA followed.[1]

## II. JURISDICTION AND THE APPELLATE STANDARD OF REVIEW

---

[1] After the District Court's Order, Richardson dismissed her claim against Sujol, leaving only the three claims for which the Motion had been denied. As such, the part of the Order granting the Motion as to Richardson's claim against Sujol is now moot.

4

The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2), and we have jurisdiction under 9 U.S.C. § 16(a)(1)(A) to consider an order refusing a stay pending arbitration under 9 U.S.C. § 3. We largely review that decision de novo, except for underlying findings of fact, which we review for clear error. *See Morales v. Sun Contractors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008).

### III. ANALYSIS

We use a two-step process to evaluate an arbitration clause in a contract: 1) whether there is a valid agreement to arbitrate; and 2) whether that agreement encompasses the dispute at issue. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019). State law governs both steps. *See id.* at 254–55; *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 522 (3d Cir. 2019). And parties are free to assign the resolution of these issues to an arbitrator. *See Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3d Cir. 2014). But that delegation requires "clea[r] and unmistakabl[e]" evidence of the parties' intent. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original).

### A.     Arbitrability of Silva's Claim Against Sujol

We start with who decides, as the Defendants argue that the incorporation of the AAA Rules in Silva's arbitration clause constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability. We agree. Silva's agreement provides that "all controversies, disputes or claims between Coverall . . . and Franchisee . . . shall be submitted promptly for arbitration" and that "[a]rbitration shall be subject to . . . the then current Rules of the American Arbitration Association for Commercial Arbitration." (App. at 94.) Clearly and unmistakably then, the AAA Rules govern the arbitration of any dispute

5

between Silva and Sujol. And Rule 7(a) of the AAA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a). That provision "is about as 'clear and unmistakable' as language can get." *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009). Nor is the rest of Silva's contract so ambiguous or unclear that the meaning of the AAA Rules becomes murky.[2]

Silva responds that relying on incorporated rules is unreasonable in agreements involving "unsophisticated parties."[3] But that likely stretches too far and would disregard the "clear and unmistakable" standard and ignore even the plainest of delegations. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) ("Our holding today should

---

[2] While "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," we need not determine whether such a rule always applies. *Chesapeake Appalachia, LLC v. Scout Petrol., LLC*, 809 F.3d 746, 763–64 (3d Cir. 2016) (alterations in original) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.,* 724 F.3d 1069, 1074 (9th Cir. 2013)). Even where an agreement incorporates the AAA Rules, a contract might still otherwise muddy the clarity of the parties' intent to delegate. For example, in *Chesapeake Appalachia*, we held that the mere incorporation of unspecified AAA rules did not demonstrate an intent to delegate arbitrability in a class action. We explained that finding clear and unmistakable evidence in that case required jumping from 1) the contract, to 2) the reference to unspecified AAA rules, to 3) the AAA Commercial Rules and, lastly, to 4) the AAA Supplementary rules, which ultimately vested an arbitrator with the authority to decide class arbitrability. 809 F.3d at 761. But Silva's contract requires no such "daisy-chain" of inferences. *Id.*

[3] Although it is not clear from the record that Silva lacks sophistication, we will assume as much.

not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability]."); *see also McGee v. Armstrong*, 941 F.3d 859, 863, 865–66 (6th Cir. 2019); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 548–49, 551–52 (5th Cir. 2018); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 767–69 (8th Cir. 2011). Here, the clarity of Silva's agreement shows the intent to delegate the arbitrability. So we will reverse the District Court's contrary conclusion and remand.

**B.    CNA's Ability to Enforce the Arbitration Clauses**

The District Court held that CNA could not enforce Richardson's arbitration clause, because it was not a third-party beneficiary of Richardson's agreement with Sujol. CNA advances several interpretive arguments, paired with pleas for equitable estoppel, all aimed at allowing CNA to compel arbitration. Some of these issues arise for the first time on appeal; others arose before the District Court only in a cursory manner. All are best fully considered by the District Court in the first instance, a path that follows from our conclusions on the Silva agreement. Because we hold that Silva and Sujol agreed to delegate arbitrability, we likewise will vacate the District Court's determination that Silva's arbitration clause does not encompass his claim against Sujol. That leaves undecided whether CNA can also enforce Silva's arbitration clause, an issue not raised in this appeal. And since CNA's rights in both the Silva and Richardson agreements may benefit from discovery, *see Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774–76 (3d Cir. 2013), we will vacate the District Court's Order regarding whether CNA is a third-party beneficiary of the Richardson contract.

7