# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 30, 2022

Lyle W. Cayce
Clerk

———————

No. 21-20089

———————

Douglas A. Lopez,

*Plaintiff—Appellant*,

*versus*

Cintas Corporation,

*Defendant—Appellee*.

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3490

———————

Before Smith, Elrod, and Oldham, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

Douglas Lopez was a local delivery driver for Cintas Corporation. That means he picked up items from a Houston warehouse (items shipped from out of state) and delivered them to local customers. Lopez does not want to arbitrate his claims against Cintas. He says that he is exempt from doing so because he belongs to a "class of workers engaged in foreign or interstate commerce" under § 1 of the Federal Arbitration Act. Because he does not belong to such a class of workers, we partially AFFIRM. But because his unconscionability claim should be resolved in arbitration, we VACATE and REMAND for that claim to be dismissed.

No. 21-20089

I.

Cintas Corporation processes, distributes, and delivers work uniforms and other facility-services products to clients nationwide. Cintas hired Douglas Lopez in early 2019. In the hiring process, Lopez checked a box on a voluntary self-identification form indicating that he has (or previously had) a disability. His job duties included picking up items from a Houston warehouse and delivering them to local clients. Those items arrived at the warehouse from out of state.

Lopez signed an employment contract which included an arbitration agreement. The agreement covered "all of [Lopez]'s rights or claims arising out of or in any way related to [Lopez]'s employment with [Cintas]," including claims under the Americans with Disabilities Act. The agreement also conspicuously stated (in bold, all-caps typeface) that the agreement was governed by the Federal Arbitration Act. And it delegated to the arbitrator the "authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable."

Cintas fired Lopez a few months after he started. Lopez then sued in state court, arguing that Cintas violated his rights under the ADA. Cintas removed the case to federal court and then moved to either stay the claims pending arbitration or to dismiss them entirely. Cintas contended that Lopez's employment contract included a binding arbitration agreement, so arbitration was the only forum for his claims. Lopez responded with § 1 of the FAA, which exempts from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. He also argued that the arbitration agreement was substantively and procedurally

unconscionable because Lopez had an intellectual disability and because the agreement was grossly one-sided and unfair.

The district court held a hearing on the motion and later granted the motion to dismiss. The district court held that Lopez did not fall within this exemption because his job duties did not require him to "pick up or deliver items out of state, [and he did not] cross state lines as part of his responsibilities." Also relevant was the fact that, as a "route skipper," he filled in for sales representatives which had "customer service" qualities unlike seamen and railroad employees (who are explicitly covered by the exemption in the FAA). Lopez timely appealed.

## II.

We review *de novo* the grant of a motion to dismiss in favor of arbitration. *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017). The question whether Lopez's contract is exempted from the FAA's coverage is decided by the court before ordering arbitration. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537–38 (2019).

Lopez argues that because he is a "transportation worker," the FAA does not apply to his employment agreement. Alternatively, he argues that even if he is not a transportation worker, he cannot be compelled to arbitrate his claims because the arbitration agreement was procedurally and substantively unconscionable.

## A.

In 1925, Congress passed and President Coolidge signed the Federal Arbitration Act. U.S. Arbitration Act, Pub. L. No. 68-401, 43 Stat. 883–86 (1925); 9 U.S.C. § 1, *et seq*. The FAA was Congress's way of responding to the general "hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

Contrary to that prior practice, the FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quotation omitted). To that end, courts must "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quotation omitted). The FAA applies to contracts "evidencing a transaction involving commerce," and employment contracts fall within that category. *Circuit City*, 532 U.S. at 113. So unless a statute clearly exempts the arbitrability of a plaintiff's claim, we must "respect and enforce" the agreement as written. *See Epic Sys.*, 138 S. Ct. at 1621.

Lopez's employment contract includes an arbitration agreement, so he has to identify an exemption to avoid arbitration. He relies on the residual clause found in 9 U.S.C. § 1, where the FAA exempts from its scope "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The Supreme Court has confined this "any other class of workers" language to exempt only "contracts of employment of transportation workers." *Circuit City*, 532 U.S. at 109.

After we held oral argument in this case, the Supreme Court decided *Southwest Airlines v. Saxon*, 142 S. Ct. 1783 (2022). There, the Court held that an airline's ramp supervisor belonged to a "class of workers engaged in foreign or interstate commerce." *See id.* at 1788. In reaching that conclusion, the Court laid out the proper framework for determining whether a person falls within the transportation-worker exemption. *Saxon*, 142 S. Ct. at 1788–90.

First, we must define the relevant "class of workers" that Lopez belongs to. Second, we must determine whether that class of workers is "engaged in foreign or interstate commerce." We address each in turn.

No. 21-20089

1.

Because the FAA "speaks of 'workers,' not 'employees' or 'servants,'" we determine the relevant "class of workers" by the work that Lopez actually did at Cintas. *Saxon*, 142 S. Ct. at 1788 (quoting *New Prime*, 139 S. Ct. at 540–41).

Lopez describes himself as a "last-mile driver." According to him, while working at Cintas, he was "responsible for visiting 20–25 customers per day, picking up and dropping off [Cintas's] products, and other responsibilities." A "Route Service Sales Representative" at Cintas, which Lopez was training to become, were tasked with various sales-related tasks that entailed "driv[ing] a truck along an established route" and "deliver[ing]" certain items to clients, all while being "the face of Cintas to [its] customers." Thus, Lopez belongs to a "class of workers" that picks up items from a local warehouse and delivers those items to local customers, with an emphasis on sales and customer service. *Saxon*, 142 S. Ct. at 1788–89. For ease of reference, we will refer to this relevant class of workers as "local delivery drivers."

2.

We must next determine whether that class of local delivery drivers is "engaged in foreign or interstate commerce" under § 1 of the FAA. To answer that question, the Court in *Saxon* looked to the ordinary meaning of the terms "engaged" (which meant "occupied," "employed," or "involved" in something) and "commerce" (which included, "among other things, 'the transportation of . . . goods, both by land or by sea'"). 142 S. Ct. at 1789 (quoting Webster's New International Dictionary 725 (1922); Black's Law Dictionary (2d ed. 1910)). It then summed that up as exempting "any class of workers directly involved in transporting goods across state or international borders." *Id.*

No. 21-20089

That led the Court to the conclusion that it was "plain that airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." *Id.* Notable for our purposes, the Court expressly declined to resolve the question whether the exemption applies to those classes of employees "further removed from the channels of interstate commerce or the actual crossing of borders," as is the case with local delivery drivers like Lopez. *See id.* at 1789 n.2. Our sister circuits that have addressed this issue have come out different ways. *Compare Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915–19 (9th Cir. 2020) (last-mile drivers fall within the "transportation worker[]" exemption in § 1), *and Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020) (same), *with Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801–02 (7th Cir. 2020) (Barrett, J.) (last-mile drivers do *not* fall within the exemption).[1]

We are thus tasked with determining whether, after *Saxon*, a class of workers a step removed from the airline cargo loader in *Saxon* is "engaged in foreign or interstate commerce." 9 U.S.C. § 1. Specifically, local delivery drivers take items from a local warehouse to local customers; these drivers enter the scene after the goods have already been delivered across state lines.

We conclude that local delivery drivers are not so "engaged" in "interstate commerce" as § 1 contemplates. That conclusion flows from the Court's elaboration in *Saxon* and *Circuit City* on what it means to be "engaged in" "interstate commerce." First, the phrase "engaged in commerce" has "a more limited reach," and this narrower reading covers

---

[1] The Supreme Judicial Court of Massachusetts also recently concluded, after *Saxon*, that local food-delivery drivers were not a "class of workers engaged in foreign or interstate commerce." *Archer v. Grubhub, Inc.*, 190 N.E.3d 1024, 1029–33 (Mass. July 27, 2022).

only "active employment" in interstate commerce. *Circuit City*, 532 U.S. at 115–16. Second, the Court has applied the *ejusdem generis* canon to § 1 and interpreted "class of workers engaged in" "commerce" to be "controlled and defined by reference" to the specific classes of "seamen" and "railroad employees" expressly mentioned in § 1. *Id.* at 115; *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199–200 (2012) (the *Ejusdem Generis* Canon: "Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned."). The Court in *Saxon* further clarified that, as a result of that interpretation, "transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." 142 S. Ct. at 1790 (quoting *Circuit City*, 532 U.S. at 121). It further elaborated that "any such worker must at least play a direct and 'necessary role in the free flow of goods' across borders." *Id.* (quoting *Circuit City*, 532 U.S. at 121).

The relevant class of workers here do not have such a "direct and necessary role" in the transportation of goods across borders. Giving § 1 "more limited reach" means limiting its applicability to those "actively engaged in transportation of those goods across borders," which is something the class of local delivery drivers here simply does not do. *Id.* (quotation omitted). Once the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce. And unlike either seamen or railroad employees, the local delivery drivers here have a more customer-facing role, which further underscores that this class does not fall within § 1's ambit. *See Saxon*, 142 S. Ct. at 1791. As a result, the transportation-worker exemption does not apply to this class of local delivery drivers.

No. 21-20089

B.

Lopez next contends that the arbitration clause in his employment agreement is unconscionable, both procedurally and substantively. But because his claims go to the enforceability of the entire contract, not just the specific arbitration agreement, that question is for the arbitrator to decide.

To compel arbitration based on a contract, there must first be a contract. *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201–02 (5th Cir. 2016). But who decides whether there is a contract? It depends. If a party opposing arbitration contests the *validity* of the contract, that goes to the arbitrator; if the party contests the *existence* of a contract, it stays with us. *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018). We look to state law to determine whether a challenge is about contract validity vs. contract existence. *Edwards v. DoorDash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018).

Under Texas law, unconscionability goes to validity rather than formation. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) ("Unconscionable contracts, however—whether relating to arbitration or not—are *unenforceable* under Texas law." (emphasis added)); *see also In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) ("Texas law renders unconscionable contracts unenforceable."). Lopez's sole argument goes to unconscionability.[2] So if his unconscionability challenge goes to the contract *as a whole*, the issue of unconscionability is for the arbitrator—not a court—to decide. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2, 71 76 (2010).

---

[2] At one point, Lopez says the consideration underlying the contract was illusory. Even viewed as a separate argument of its own, that changes nothing: An illusoriness challenge under Texas law "is properly considered a validity challenge rather than a formation challenge." *Arnold*, 890 F.3d at 551.

Lopez argues that he disclosed his disability, and thus Cintas violated its alleged duty to make sure he could actually read his employment agreement before he signed it. This, he says, is what renders his arbitration agreement procedurally and substantively unconscionable. Though Lopez frames his argument as being solely about the arbitration provision, he offers no explanation for why his challenge—if successful—would not render the entire contract unconscionable. Thus, Lopez challenges the validity of the contract, not just the arbitration agreement.

Because unconscionability under Texas law is a challenge to the validity, not the existence, of a contract, that challenge must be resolved by an arbitrator. *See Rent-A-Center*, 561 U.S. at 71–72. As a result, the district court erred in resolving the merits of Lopez's unconscionability claim.

\*     \*     \*

Because Lopez is not a "transportation worker" under § 1 of the FAA, we AFFIRM that portion of the district court's judgment. But because Lopez's unconscionability challenge to his employment agreement must be decided in arbitration, we VACATE and REMAND for that claim to be dismissed without prejudice to be considered in arbitration in the first instance.