**Reversed and Remanded and Opinion Filed August 5, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-20-00380-CV
No. 05-20-00387-CV
No. 05-20-00388-CV
No. 05-20-00389-CV
No. 05-20-00390-CV

**PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC; TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN,**
**Appellants / Relators**
**V.**
**MARY JO JENNINGS, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF LEAH ALICE CORKEN; LISA CULLEN, INDIVIDUALLY; MATT CORKEN, INDIVIDUALLY; DIANNE TANNERY, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF JUANITA PURDY; THOMAS DUCKER, INDIVIDUALLY; SHERRIL KERR, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF GLENNA DAY; GREGORY B. DAY, INDIVIDUALLY; MARSHA SPRING REPP AND STEPHEN SPRING, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF SOLOMON H. SPRING; MICHAEL SOLOMON, MATTHEW ABRAMOWITZ, AND PAUL ABRAMOWITZ, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF JOYCE ABRAMOWITZ; AND MARC ABRAMOWITZ, INDIVIDUALLY,**
**Appellees / Real Parties in Interest**

**On Appeal and Original Proceeding from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. CC-19-03747-B**
**CC-19-03737-B**
**CC-19-03754-B**
**CC-19-03757-B**
**CC-19-03745-B**

## OPINION

Before the En Banc Court
Opinion by Justice Pedersen, III

Appellants-relators[1] bring this appeal and petition for writ of mandamus challenging the trial court's orders granting a stay of arbitration and denying appellants' plea in abatement, which sought an order for the parties to attend arbitration. On appeal, appellants raise four issues, contending that the trial court abused its discretion in (i) deciding the arbitrability issues, (ii) staying arbitration, (iii) declining to order the parties to arbitration, and (iv) striking a supporting affidavit attached to appellants' plea in abatement. In their petition for writ of mandamus, appellants assert the trial court abused its discretion in issuing its orders because the claims can be arbitrated under Texas common law.

We agree with appellants and reverse the trial court's orders. We remand the causes with instructions to order the parties to arbitration and stay the underlying cases pending the outcome of the arbitration. We dismiss appellants' petition for writ of mandamus as moot.

---

[1] Prior to submission, we consolidated relators' original proceeding, cause number 05-20-00619-CV, into the 05-20-00380-CV cause.

# I.    BACKGROUND

## A. Parties and History Before Litigation

In 2016, Leah Corken, Juanita Purdy, Glenna Day, Solomon Spring, and Joyce Abramowitz died while they were residents of The Tradition-Prestonwood, a senior living community owned and operated by appellants. The decedents had signed written leases with appellants, which provide:

**7.    Your Rights and Responsibilities**
. . . .
      **E.    Waiver of Jury Trial**. Pursuant to the Arbitration Agreement set forth in Section 8 below, EACH PARTY HERETO WAIVES ITS RIGHT TO A TRIAL BY JURY AND AGREES TO SUBMIT TO BINDING ARBITRATION in any action, proceeding or counterclaim brought by any party against any other party.
. . . .
**8.    Arbitration Agreement**
      **A.    Agreement To Arbitrate**. Should a dispute arise between us, we desire to avoid costly and time-consuming litigation. ***Landlord and You agree that any claims, controversies, or disputes arising between us and in any way related to or arising out of the relationship created by this Agreement shall be resolved exclusively by binding arbitration.*** . . . . Accordingly, neither Landlord nor You will be permitted to pursue court action regarding these claims, controversies, or disputes.
      **B.    Conduct Of The Arbitration**. The arbitration shall be conducted by a panel of either one or three neutral arbitrators (the "Panel"), said number being chosen by You. The member(s) of the Panel shall be chosen by the American Arbitration Association ("AAA") or by mutual agreement between the parties. . . . . The Panel shall follow the current Commercial Arbitration Rules of the AAA.
. . . .
      **E.    Waiver Of Jury Trial**. Any claim, controversy, or dispute between the parties for which arbitration is not allowed by law shall be brought in an appropriate court before a judge. ***Both You and Landlord waive your rights to a trial by jury.***

**F.** **Applicability To Related Parties**. You and Your Authorized Representative agree that this Agreement, in particular this Section 8, shall be binding upon them personally. This Agreement shall be binding upon and inure to the benefit of all persons whose claim is derived through or on behalf of You, including that of the [sic] Your family, heirs, guardian, executor, administrator and assigns. This Agreement shall be binding upon and inure to the benefit of Landlord, Tradition Management, LLC, and its subsidiaries and their respective directors, officers, employees, representatives, or agents. **THIS AGREEMENT CONTAINS BOTH AN ARBITRATION PROVISION AND A WAIVER OF JURY TRIAL, WHICH MAY BE ENFORCED BY THE PARTIES**.

**9.** **MISCELLANEOUS**

. . . .

**G.** **Governing Law.** Except as noted above, this Agreement shall be governed by and construed under the laws of the State of Texas.

(emphases in original).

Appellees-real parties in interest are individuals and representatives of the estates of the decedents who sought to resolve claims against appellants related to the decedents' deaths. The parties attended mediation, and appellants invoked the above arbitration agreements. On June 17, 2019, appellants filed arbitration actions with the AAA. On June 25, 2019, appellees responded to the arbitration action before the AAA and filed five separate suits in Dallas County Court.

## B. Procedural History of Litigation

Appellees sued appellants—both individually as wrongful death beneficiaries and as executors of the respective estates—for (i) declaratory judgment; (ii) negligent undertaking; (iii) premises liability; (iv) general negligence; and (v) negligent hiring, training, and supervision. The claims for declaratory judgment sought a declaration that appellees' claims were not subject to arbitration. Appellees

–4–

further moved to stay the arbitrations in each case. Appellants answered in the trial court and filed pleas in abatement in each case, requesting that the trial court abate the cases so that arbitration could proceed.

The record does not indicate that an arbitrator or arbitration panel was ever selected. However, on June 28, 2019, the AAA responded to the arbitration communications as follows:

> Upon review of the parties' contentions, the AAA has made an administrative determination that it will not proceed with the administration of the submissions unless the parties mutually agree, or until the issue of arbitrability is decided by the Dallas County, Texas Court ("Court").

The parties submitted arguments and attached evidence in support of their respective motions and responses regarding arbitration. Appellees objected to and moved to strike an affidavit from appellants. On September 30, 2019, the trial court heard the arbitration motions. Regarding the AAA's administrative determination, the trial court stated, "I don't think that's an end all be all on the outcome." After the hearing, the parties submitted further arguments and authorities related to the arbitration dispute; appellants responded to appellees' objections to their affidavit. On February 28, 2020, the trial court granted appellees' requests for stay of arbitration and denied appellants' requests for abatement.[2]

> IT IS THEREFORE ORDERED that *Plaintiffs' Motions to Stay Arbitration* in each of the above-captioned matters are **GRANTED**,

---

[2] At the time of the September 30, 2019 hearing, the Salomon/Abramowitz and Repp/Spring cases had not been transferred into the trial court. However, both of those cases were transferred to the trial court, along with the other three cases, before the trial court's February 28, 2020 order.

–5–

and the arbitration proceeding with the American Arbitration Association that is currently pending between Plaintiffs and Defendants is **STAYED**.

IT IS FURTHER ORDERED that *Defendant's Pleas in Abatement* in each of the above-captioned matters are **DENIED** [.]

These interlocutory appeals followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098. Appellants further petitioned for writs of mandamus. We have consolidated each original proceeding into the corresponding interlocutory appeal.

## II. ISSUES RAISED

On appeal, appellants raise four issues to our Court:

1.  The trial court abused its discretion when it decided the arbitrability issues, because federal and Texas law require that determination of arbitrability issues be referred to the arbitrator, and the Leases specifically provide for AAA arbitration.

2.  To the extent the trial court based its decision to stay the arbitrations on the Texas Arbitration Act, such decision was an abuse of discretion because the FAA, not the TAA, applies.

3.  The trial court abused its discretion when it declined to order the parties to AAA arbitration, because the uncontroverted evidence established Appellants were entitled to arbitration under the FAA.

4.  The trial court abused its discretion when it struck the affidavit supporting of Appellants' pleas in abatement, as Appellees failed to timely object and their objections are without legal basis.

On petition for writ of mandamus and apart from asserting they have no adequate remedy at law, appellants raise one issue to our Court:

1.  If this Court holds the statutory arbitration schemes argued in such appeals do not apply, the trial court nevertheless abused its discretion in issuing such Order because the claims can be arbitrated under Texas common law.

Because our resolution of appellants' first issue obviates the need to discuss the remaining issues, we limit our discussion accordingly. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### III. STANDARD OF REVIEW

"Arbitration agreements can be enforced under either statutory provisions or the common law." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015) (citing *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977)).[3] We review a trial court's order on a motion to stay arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding)). We review the trial court's legal determinations de novo. *In re Labatt Food Serv.*, 279 S.W.3d at 643.

---

[3] "[A] dual system of arbitration has existed in Texas, and the statutory method has been viewed as cumulative of the common law." *L. H. Lacy Co.*, 559 S.W.2d at 351.

## IV. DISCUSSION

**Issue One: Whether the Trial Court Abused Its Discretion When It Decided the Arbitrability Issues**

*i.   Decedents' Agreement to Arbitrate*

"[W]hen a party seeks to compel arbitration based on a contract, the first question is whether there is a contract between the parties at all." *HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *3 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.) (citing *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

> Under Texas law, a binding contract requires: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.

*HomeAdvisor*, 2020 WL 2988565, at *3 (citation omitted).

Here, it is undisputed that decedents agreed to the leases by signature. Each lease shows the decedent agreed to arbitrate and expressly bound "all persons whose claim is derived through or on behalf of [decedent], including that of the [decedent's] family, heirs, guardian, executor, administrator and assigns." In Texas, the death of a natural person does not ordinarily extinguish his or her contracts. *Solomon v. Greenblatt*, 812 S.W.2d 7, 17 (Tex. App.—Dallas 1991, no writ) (citation omitted).

–8–

Appellees have brought claims that derive from the decedents' allegedly wrongful deaths. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004. In *In re Labatt Food Service,* the Texas Supreme Court explained:

> While it is true that damages for a wrongful death action are for the exclusive benefit of the beneficiaries and are meant to compensate them for their own personal loss, the cause of action is still entirely derivative of the decedent's rights. TEX. CIV. PRAC. & REM. CODE §§ 71.003(a), .004(a); *Russell*, 841 S.W.2d at 347. Thus, regardless of the fact that [decedent]'s beneficiaries are seeking compensation for their own personal loss, they still stand in [decedent]'s legal shoes and are bound by [his or her] agreement.

279 S.W.3d at 646. Thus, regarding appellees' wrongful death claims, they are bound by the decedents' agreements. *See In re Golden Peanut Co., L.L.C.*, 298 S.W.3d 629, 631 (Tex. 2009) (orig. proceeding) (per curiam) (wrongful death beneficiaries are bound by decedent's pre-death arbitration agreement "because, under Texas law, the wrongful death cause of action is entirely derivative of the decedent's rights"); *Arredondo v. Dugger*, 347 S.W.3d 757, 764 (Tex. App.—Dallas 2011), *aff'd on other grounds*, 408 S.W.3d 825 (Tex. 2013) ("A statutory wrongful death claim is wholly derivative of the decedent's claim and is subject to any defense that would have been available against the decedent had they survived.").

In addition, appellees asserted survival claims that derive from the decedent's rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.021. "The purpose of the survival statute is to continue a decedent's cause of action beyond death to redress the decedent's estate for decedent's injuries." *Stevenson v. Ford Motor Co.*, 608

S.W.3d 109, 131 (Tex. App.—Dallas 2020, no pet. h.). "The survival action, as it is sometimes called, is wholly derivative of the decedent's rights." *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992) (explaining that if decedent's action for injuries would have been barred by limitations had it been asserted immediately prior to his death, survival action and wrongful death actions based on same alleged wrong are likewise barred); *see also Brown v. Shwarts*, 968 S.W.2d 331, 334 (Tex. 1998) (explaining parents' survival action "as wholly derivative of [child]'s, the injury is that which he suffered, and the damages are those he sustained while he was alive"). "A defendant can raise the same defenses in the survivorship action that it could assert against the injured person." *Waters ex rel. Walton v. Del-Ky, Inc.*, 844 S.W.2d 250, 254 (Tex. App.—Dallas 1992, no writ). Arbitration and award is an affirmative defense, which appellants (i) have raised against appellees and (ii) could have asserted against the decedents. *See* TEX. R. CIV. P. 94; *see, e.g., Nabors Drilling USA, LP v. Pena*, 385 S.W.3d 103, 109 (Tex. App.—San Antonio 2012, pet. denied) (explaining decedent's family's wrongful death and survival actions against employer were subject to arbitration agreement between decedent and employer); *In re Jindal Saw Ltd.*, 264 S.W.3d 755, 766–67 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding), (explaining that decedent's arbitration agreement with his employer stating to bind his "heirs, beneficiaries and assigns" bound decedent's widow to the arbitration agreement) *mand. granted*, 289 S.W.3d 827 (Tex. 2009) (per curiam).

As appellees' survival actions arise from the decedents' rights—brought on behalf of the decedents—those claims are subject to the decedents' arbitration agreements. *See Waters ex rel. Walton*, 844 S.W.2d at 254. Furthermore, as Section 8.F. indicates, the leases expressly anticipated such a result. Thus, regarding appellees' survival actions, they are bound by the decedents' agreements. Accordingly, we must conclude that appellees are bound by the decedents' arbitration agreements in the leases.

*ii.* *Arbitrability*

A trial court generally determines the arbitrability of an arbitration agreement, unless the parties clearly and unmistakably provide otherwise. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[4] "Where the parties' contract clearly and unmistakably delegates the arbitrability question to the arbitrator, the court possesses no power to decide the arbitrability issue." *HomeAdvisor*, 2020 WL 2988565, at *5 (citing *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 532 (Tex. 2019)).

Appellants assert that the language in the leases incorporated (i) "any claims, controversies, or disputes" and (ii) the AAA's Commercial Arbitration Rules by reference, such that arbitrability is an issue for the arbitrator to decide. In response,

---

[4] *See also RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) ("The U.S. Supreme Court has explained that there are three types of disagreements in the arbitration context: (1) the merits of the dispute; (2) whether the merits are arbitrable; and (3) who decides the second question. . . . The default rule for the third question is that arbitrability is a threshold matter for the court to decide." (first citing *First Options*, 514 U.S. at 942, and then citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008))).

–11–

appellees, without authority, assert that the threshold question of arbitrability necessitates a determination of whether the FAA or the TAA applies. Appellees incorrectly rely on *RSL Funding, LLC v. Newsome* to assert that the trial court—and not the arbitrator—must determine that threshold issue before any jurisdiction or authority can even arguably be delegated to an arbitrator. 569 S.W.3d 116, 121–24 (Tex. 2018).

> To the contrary, in *RSL Funding*, the Texas Supreme Court explained:
>
> Arbitrators are competent to decide any legal or factual dispute the parties agree to arbitrate.
> . . . .
> [A]s parties have a right to contract as they see fit, they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator.
> . . . .
> [W]e have held that parties may contract to arbitrate issues even when the law vests some related exclusive power in a court.
> . . . .
> Here, the courts below have not questioned the validity of parties' arbitration clause. *We thus have no choice but to send this dispute to arbitration for the arbitrator to at least decide arbitrability*.

569 S.W.3d at 121–23 (internal citations omitted, emphasis added).[5] In *HomeAdvisor*, we addressed arbitrability of a contract that incorporated the AAA's Commercial Arbitration Rules:

> [A]rbitration procedures specified that any arbitration would be administered by the AAA and governed by the AAA's Commercial Arbitration Rules. The AAA rules expressly delegate the issue of arbitrability to the arbitrator. This Court and many others have held that

---

[5] We note the arbitration provision in *RSL Funding* did not involve the AAA or incorporate its Commercial Arbitration Rules. *See generally RSL Funding*, 569 S.W.3d at 119.

a bilateral agreement to arbitrate under the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator. *Arnold*, 890 F.3d at 553; *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229-30 (Tex. App.—Dallas 2010, pet. denied).

2020 WL 2988565, at *5.

As in *HomeAdvisor*, the record here shows the decedents' leases, which were bilateral agreements, included an arbitration provision that clearly informed, with emphasized text, the decedents that (i) they were waiving their right to jury trial and (ii) their rights would be determined by a panel of either one or three neutral arbitrators. However, no arbitrator was selected. The scope of the arbitration provisions expressly included that "any claims, controversies, or disputes arising between us and in any way related to or arising out of the relationship created by this Agreement shall be resolved exclusively by binding arbitration." As in *HomeAdvisor*, the arbitration provisions in the leases specify that any arbitration would be administered by the AAA and governed by the AAA's Commercial Arbitration Rules.[6]

Thus, we must conclude appellants have established the existence of an arbitration agreement between them and appellees. Appellants have established that

---

[6] The record includes the AAA's Commercial Arbitration Rule R-7, which provides, in part:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

*See, e.g.*, *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 228 (Tex. App.—Dallas 2010, pet. denied) (discussing AAA rules); *PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 386 (Tex. App.—Dallas 2009, no pet.) (discussing Commercial Arbitration Rule R-7).

all defenses to arbitration, including validity of the arbitration provision, were delegated to the arbitrator. The record shows no arbitrator decided arbitrability. Accordingly, the trial court erred in granting appellees' motions to stay arbitration and in denying appellants' pleas in abatement. *See HomeAdvisor*, 2020 WL 2988565, at *5. We resolve appellants' first issue in their favor. Because of our resolution of this issue, we pretermit further discussion and do not reach the remaining issues on appeal and the sole issue on petition for writ of mandamus.[7]

## V. THE DISSENT

The Dissent asserts that our adjudication of the issues in this case conflicts with our prior opinion in *Roe v. Ladymon*, 318 S.W.3d 502, 513 (Tex. App.—Dallas 2010, no pet.).[8] Relying on *Roe*, the Dissent opines that, because appellees did not individually sign the decedents' leases, appellees (i) were non-signatories to the contract (ii) without clear and unmistakable evidence that they authorized an arbitrator to decide the gateway question of arbitrability.

In *Roe*, we considered who had the primary power to decide whether appellants there could compel appellees to arbitrate claims: a court or an arbitrator. *See Roe*, 318 S.W.3d at 511. Roe contracted with Metro LLP to renovate her home, and Ladymon signed the contract "in his capacity as a partner of Metro LLP." *Id.* at

---

[7] Not only is further discussion unnecessary, imparting further opinion risks providing an advisory opinion when it is not our question to decide.

[8] We note neither appellants nor appellees rely upon *Roe*.

–14–

507.[9] This contract included an arbitration provision. *Id*. Unsatisfied with the remodeling work, Roe demanded arbitration against both Metro LLP and Ladymon. *Id.* at 508. The parties attended arbitration, and the arbitrator ultimately signed an award in favor of Roe against Metro LLP and Ladymon—jointly and severally liable for Roe's damages. *Id.* at 509. The trial court confirmed the arbitration award but stated the following as to the award against Ladymon, individually:

> Defendant Ladymon timely and properly objected to the arbitrator regarding the arbitrator's lack of jurisdiction over him in a personal capacity. Furthermore, whether or not Defendant Ladymon was personally liable for the debts of defendant [Metro LLP] is a separate issue from whether or not Defendant Ladymon was bound by the arbitration clause.

*Id.* at 509. The trial court further held

> that the arbitrator exceeded his authority in rendering an award against Ladymon individually, stating: "The arbitrator was without jurisdiction and the determination of the arbitrator's jurisdiction is a matter of arbitrability under *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920 [131 L.Ed.2d 985] (1995) and is exclusively reserved to this Court."

*Id*. In first addressing the applicability of an arbitration agreement, we explained:

> Disputes about the scope of an arbitration agreement are resolved in favor of arbitration. However, this presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.
>
> Like other contracts, nonparties are normally not bound by arbitration agreements between others. But just as other contracts can become binding on nonparties, principles of contract law and agency may bind

---

[9] Metro LLP later converted to a limited partnership, with Ladymon serving as a limited partner. *Roe*, 318 S.W.3d at 507–08.

–15–

a non-signatory to an arbitration agreement. Thus non-signatories to a contract containing an arbitration clause may be required to arbitrate if rules of law or equity would bind them to the contract generally. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) ("Indeed, if Texas law would bind a nonparty to a contract generally, the FAA would appear to preempt an exception for arbitration clauses alone.")

*Id.* at 511 (internal citations and quotations omitted).[10] In *Roe*, we further discussed whether a non-signatory to an arbitration agreement could be required to arbitrate.

[A] court should decide whether an arbitration contract binds a person who did not sign the contract.

While non-signatories to an arbitration agreement can be bound to arbitrate under principles of contract and agency law, such issues—dealing as they do with non-signatories—are gateway "issues of arbitrability" that the courts are primarily responsible for deciding—not the arbitrator. And only if the non-signatory has "clearly and unmistakably agreed" to submit that issue to arbitration will the courts be bound to a deferential review of the arbitrator's decision that the non-signatory is bound by the arbitration agreement.

*Id.* at 515 (internal citations omitted). We concluded Roe had not shown that Ladymon "'clearly agreed to have the arbitrator [ ] decide (i.e., to arbitrate) the question of arbitrability.'" *Id*. at 517 (quoting *First Options*, 514 U.S. at 946). We rejected the argument that Ladymon's execution of the contract *on behalf of Metro LLP* was evidence that "he clearly and unmistakably agreed the arbitrator could

---

[10] Unlike the contract claims in *Roe*, *In re Labatt Food Services* and *In re Weekley Homes* involved wrongful death and personal injury. *In re Labatt Food Serv.*, 279 S.W.3d at 649 (holding "the arbitration provision in an agreement between a decedent and his employer requires the employee's wrongful death beneficiaries to arbitrate their wrongful death claims against the employer even though they did not sign the agreement"); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (orig. proceeding) (recognizing that a "nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself" in discussion of a personal injury claim where claimant demanded compliance with the contract).

decide whether he is bound to arbitrate claims *against him individually*." *Id.* at 516 (emphasis added).

The Dissent opines that appellees in this case are in the same position as Ladymon in *Roe* because "both are non-contracting parties because they did not sign the leases." *See id.* at 517. The result of the Dissent's rule suggests that nonparties to a contract containing an arbitration provision can never be bound by arbitration agreements they did not individually sign—an argument the Texas Supreme Court has repeatedly rejected. *See In re Labatt Food Serv.*, 279 S.W.3d at 644; *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (orig. proceeding). Here, appellees' positions in the instant case are distinguishable from that of Ladymon in *Roe*.

Unlike *Roe*—in which neither Metro LLP nor Ladymon agreed to subject Ladymon to the contract—the decedents here agreed to arbitrate and explicitly bind "all persons whose claim is derived through or on behalf of [decedent], including that of the [decedent's] family, heirs, guardian, executor, administrator and assigns" to the leases. Unlike Ladymon—who sought to *avoid* liability under a contract he was not a party to—appellees' claims of wrongful death and survival action *derive* from the respective decedents, who each agreed to arbitration. Appellees have asserted claims that can only be raised (i) by stepping into the decedents' legal shoes or (ii) by the decedents—as appellees have done on behalf of the decedents' estates. *See In re Labatt Food Serv.*, 279 S.W.3d at 646; *Stevenson*, 608 S.W.3d at 131.

–17–

Therefore, Ladymon's position in *Roe* as a non-signatory to an agreement is not comparable to appellees' positions in this case. As we conclude above, appellees are subject to the decedents' agreements.

The Dissent also misapplies Texas law concerning delegation of arbitrability decisions to the arbitrator. As noted above, it is undisputed that the decedents' lease agreements incorporate the AAA's Commercial Rules and thus should be read to call for the arbitrator to determine arbitrability. The Dissent carefully outlines the law of arbitrability, concluding its analysis with the statement: "I agree that under ordinary circumstances, incorporation of the Commercial Rules in an arbitration agreement signifies that the agreement calls for the arbitrator to determine arbitrability." Dissent at 18. The Dissent supports this conclusion by citing eight cases—three from our Court, three from different sister courts, and two from the Fifth Circuit. Dissent at 18 and n.6.

But these are no "ordinary circumstances," according to the Dissent, and all of that cited authority does not lead to the same conclusion in our case. Indeed, this case is unique, according to the Dissent, because "none of these cases involved a situation such as here where the AAA deferred the arbitrability determination to the state court . . . . [and] these cases did not involve parties disputing arbitration who were non-signatories to the agreement." The Dissent crafts an interesting and creative argument from this premise, but it cites to no Texas rule, case, or statute that supports such a newly created exemption from the widely adopted "ordinary"

–18–

rule. Neither of the factors pointed to by the Dissent supports such a departure from settled law. *See Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of a court of appeals to abrogate or modify established precedent. . . . That function lies solely with [the Texas Supreme] Court." (internal citation omitted)).

The Dissent places great weight on the AAA's deferring to the trial court on arbitrability, but that weight is misplaced. The only decisions of the AAA that carry any legal weight are substantive ones made pursuant to an agreement by parties to arbitrate. "[Arbitrators] have no independent source of jurisdiction apart from the parties' consent." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21–22 (Tex. 2014) (citing *I.S. Joseph Co. v. Mich. Sugar Co.,* 803 F.2d 396, 399 (8th Cir.1986)), *Hann v. Vintage Estate Homes, LLC*, No. 05-21-00103-CV, 2022 WL 1222828, at *4 (Tex. App.—Dallas Apr. 26, 2022, no pet. h.).[11]

When the parties agree to have the arbitrator decide arbitrability, as they did in this case, then the AAA lacks discretion to require something different. "Arbitration is a matter of contract, and that which the parties agree must be arbitrated shall be arbitrated." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). The Dissent appears to accept that the AAA can

---

[11] The AAA's communications to these parties acknowledge that its decision to defer ruling absent agreement of the parties or a court order is an "administrative" one. It is undisputed that no arbitrator (or panel of arbitrators) has made a substantive arbitrability decision because no arbitrator (or panel) has been selected through AAA rules.

authorize a trial court to perform an action the parties delegated to an arbitrator, but it offers no legal authority for that proposition. By acquiescing to this administrative decision, the Dissent appears to be treating the AAA as if it were a governmental agency, granting deference to its administrative decisions. *See, e.g., Combined Specialty Ins. Co. v. Deese*, 266 S.W.3d 653, 661 (Tex. App.—Dallas 2008, no pet.) (we defer to agency's interpretation of its own rules as long as interpretation is reasonable). But the AAA is not a governmental agency, and its refusal to comply with the parties' agreement is not a decision that deserves deference. Nor is that decision one that supports making an exception to a long-settled judicial principle.[12]

## VI. CONCLUSION

We reverse the trial court's orders granting a stay of arbitration and denying appellants' plea in abatement. We remand the causes with instructions to order the parties to arbitration and to stay the underlying causes pending the outcome of the arbitrations.

---

[12] I note that under our original panel opinion, the trial court could have addressed the AAA's administrative decision by issuing an order stating, correctly, that the arbitrability issues were for the arbitrator and that the AAA should proceed with the arbitrations as agreed.

We dismiss appellants' petition for writ of mandamus as moot.


/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE


Opinion of the Court by Pedersen, J., joined by Myers, Schenck, Osborne, Reichek, Goldstein, and Smith, JJ.
Schenck, J., concurring.

Partida-Kipness, J., dissenting, joined by Burns, C.J., and Molberg, Nowell, Carlyle, and Garcia, JJ.


200380F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN, Appellants

No. 05-20-00380-CV      V.

MARY JO JENNINGS, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF LEAH ALICE CORKEN; LISA CULLEN, INDIVIDUALLY; AND MATT CORKEN, INDIVIDUALLY Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-19-03747-B.
Opinion of the En Banc Court delivered by Justice Pedersen, III.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP;

PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN recover their costs of this appeal from appellee Mary Jo Jennings, Individually and as the Independent Executrix and Representative of the Beneficiaries of the Estate of Leah Alice Corken; appellee Lisa Cullen, Individually; and appellee Matt Corken, Individually.

Judgment entered this 5th day of August, 2022.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN, Appellants

No. 05-20-00387-CV      V.

DIANNE TANNERY, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF JUANITA PURDY; AND THOMAS DUCKER, INDIVIDUALLY Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-19-03737-B.
Opinion of the En Banc Court delivered by Justice Pedersen, III.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN recover their costs of this appeal from appellee Dianne Tannery, Individually and as the Independent

Executrix and Representative of the Beneficiaries of the Estate of Juanita Purdy; and appellee Thomas Ducker, Individually.


Judgment entered this 5th day of August, 2022.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN, Appellants

No. 05-20-00388-CV      V.

SHERRIL KERR, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF GLENNA DAY; AND GREGORY B. DAY, INDIVIDUALLY, Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-19-03754-B.
Opinion of the En Banc Court delivered by Justice Pedersen, III.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN recover their costs of this appeal from appellee Sherril Kerr, Individually and as the Independent Executrix

and Representative of the Beneficiaries of the Estate of Glenna Day; and appellee Gregory B. Day, Individually.

Judgment entered this 5th day of August, 2022.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN, Appellants

No. 05-20-00389-CV          V.

MARSHA SPRING REPP AND STEVEN SPRING, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF SOLOMON H. SPRING, Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas Trial Court Cause No. CC-19-03757-B.
Opinion of the En Banc Court delivered by Justice Pedersen, III.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN recover their costs of this appeal from appellees Marsha Spring Repp and Steven Spring, Individually and as

the Co-Executors and Representatives of the Beneficiaries of the Estate of Solomon H. Spring.

Judgment entered this 5th day of August 2022.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN, Appellants

No. 05-20-00390-CV          V.

MICHAEL SOLOMON, MATTHEW ABRAMOWITZ, AND PAUL ABRAMOWITZ, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF JOYCE ABRAMOWITZ; AND MARC ABRAMOWITZ, INDIVIDUALLY, Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-19-03745-B.
Opinion of the En Banc Court delivered by Justice Pedersen, III.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC, TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN recover their costs of this

–30–

appeal from appellees Michael Solomon, Matthew Abramowitz, and Paul Abramowitz, Individually and as the Co-Executors and Representatives of the Beneficiaries of the Estate of Joyce Abramowitz, and Marc Abramowitz, Individually.

Judgment entered this 5th day of August, 2022.