

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00104-CV

---

**LKQ Automotive d/b/a Keystone Automotive Industries, Inc.
and Jesus Duron, Appellants**

v.

**Adan Robert Romo, Appellee**

---

On Appeal from the 448th District Court
El Paso County, Texas
Trial Court No. 2024DCV1041

---

## MEMORANDUM OPINION

Appellant LKQ Automotive D/B/A Keystone Automotive Industries, Inc (LKQ) is a company in El Paso that ships auto parts to various states outside of Texas. Appellee, Adan Robert Romo, was employed by LKQ as a commercial truck driver to transport goods between its warehouses and to load and unload goods at those warehouses. Romo was injured on the job and filed a lawsuit against LKQ and two LKQ employees, Appellant Jesus Duron and Peter Torres,[1]

---

[1] Peter Torres did not join in the motion to compel arbitration and is not a party to this appeal.

seeking damages for personal injuries. LKQ and Duron moved to compel arbitration based on an arbitration agreement that Romo signed when he was hired. Romo opposed arbitration, contending he was a transportation worker engaged in interstate commerce and therefore not subject to arbitration pursuant to a Federal Arbitration Act (FAA) exception. Romo also argued that the arbitration agreement was not enforceable under the Texas Arbitration Act (TAA) as he was not given the opportunity to consult with an attorney prior to signing the agreement, nor did his attorney sign the agreement.

The trial court denied the motion to compel arbitration, and this appeal followed. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The parties' arbitration agreement

When LKQ hired Romo in January 2019 as a commercial truck driver, he signed documents informing him that LKQ was a Texas Workers Compensation Act nonsubscriber and did not have workers compensation insurance. LKQ gave Romo a copy of its "Injury Benefit Plan For Texas Employees" (the Plan), which provided benefits to its employees for on-the-job injuries. The Plan stated that certain injury-related disputes would be submitted to binding arbitration. Romo's onboarding documents also referred to the "mandatory company policy requiring that certain claims or disputes must be submitted to final and binding arbitration under this arbitration requirement," which included personal injury and negligent hiring claims. The employment agreement explained, "binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute."

The arbitration agreement stated that LKQ was "engaged in transactions involving interstate commerce (for example, purchasing goods and services from outside Texas which are

2

shipped to Texas, or traveling on interstate roadways) and the Employee's employment involves such commerce." The agreement provided that, except as provided, "the Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings under the arbitration provisions of this Policy." And, it stated, "[t]o the extent that the Federal Arbitration Act is not applicable, Texas common law shall apply."

Romo signed an acknowledgment indicating he received a copy of the company's mandatory arbitration policy and agreed to its terms.

### B. Romo sues and Appellants move to compel arbitration

On March 5, 2024, Romo filed a lawsuit against LKQ, Torres, and Duron, alleging he suffered bodily injury as a result of Torres negligently striking him from behind on a forklift while Romo was operating a forklift in the course and scope of his employment in April 2023. Romo alleged LKQ and Duron "failed to provide him with a safe workplace" and were vicariously liable for the "acts or omissions" of "any person on the job site over whom [they] retained control."[2]

After filing answers in which they denied liability, Appellants filed a motion to compel arbitration, arguing Romo was bound by a valid, binding arbitration agreement under which his claims fell. In support, Appellants attached a copy of Romo's employment documents, the Plan, and an affidavit from Fernando Rodriguez, LKQ's Senior Director of HR Technology, verifying the authenticity of the documents and attesting that Romo had signed the documents in which he agreed to be bound by the mandatory arbitration agreement in the Plan.

Opposing the motion to compel arbitration, Romo did not deny that he signed the arbitration agreement, did not deny the agreement's validity, and did not contest that his claims

---

[2] The parties do not identify Duron's role, but we presume for purposes of this appeal only that he was employed by LKQ and that Romo is contending Duron had some supervisory authority over Torres.

3

came within the scope of the agreement. But Romo argued that he came within the "transportation worker" exemption to the FAA, attesting to his work in an affidavit:

> As part of my employment with LKQ . . . my responsibilities include[d] driving a truck from one warehouse to another and loading and unloading auto parts. These auto parts are shipped from Las Cruces, Alamogordo, Albuquerque, Roswell, Phoenix, etc. Once transported to a warehouse, these auto parts get shipped to New Mexico, Phoenix, etc.

Despite that the TAA is not mentioned in the arbitration agreement, Romo further argued that because FAA was not applicable to his case, the TAA governed the agreement. And, he maintained, because an arbitration agreement pertaining to personal injury claims under the TAA is only enforceable if entered on the advice of counsel and signed by both parties and their attorneys, the agreement was unenforceable because his attorney did not sign the documents, nor was he given the opportunity to consult with his attorney before signing.[3]

Appellants did not file a controverting affidavit, nor is there any indication in the record that they sought permission to do so.[4]

The trial court held a non-evidentiary remote hearing on Appellants' motion by Zoom, but no court reporter was available to record the hearing, and no official record of the hearing is in the appellate record.[5] Following the hearing, the trial court denied the motion to compel arbitration. This interlocutory appeal followed.

---

[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002 (c)(1)(2) (providing that the TAA does not apply to a personal injury claim unless each party to the agreement, "on the advice of counsel, agrees in writing to arbitrate; and . . . the agreement is signed by each party and each party's attorney").

[4] Appellants point out that Romo filed his opposition two days before the trial court's Zoom hearing, and they contend they did not have time to reply. However, Texas Rule of Civil Procedure 166a(c), which is applicable to arbitration proceedings, allows a trial judge to admit late-filed evidence upon a party's request. *See Wright v. Hernandez*, 469 S.W.3d 744, 755 (Tex. App.—El Paso 2015, no pet.); *see also Grant v. Espiritu*, 470 S.W.3d 198, 203 (Tex. App.—El Paso 2015, no pet.) (although the Rules of Civil Procedure provide for strict deadlines for filing responses and supporting evidence, they allow a trial judge to admit late-filed evidence upon "leave of court").

[5] After this Court did not accept the Zoom recording as a substitute for an official reporter's record, Appellants provided a supplemental clerk's record, indicating they had retained a licensed court reporter to transcribe the Zoom recording and sought a stipulation from Romo's attorney allowing them to utilize the transcription as an official

4

## II.  ISSUE ON APPEAL

On appeal, Appellants contend the trial court erred in denying their motion to compel arbitration because the arbitration agreement was valid and enforceable under the FAA, and Romo did not meet his burden of establishing that he came within the transportation worker exemption in the FAA. Appellants do not seek enforcement of the agreement under the TAA or any other state law.

As explained below, we agree with Romo that he met his burden of establishing that he comes within the transportation-worker exemption to the FAA, and that the agreement is therefore unenforceable.

## III.  APPLICABLE LAW

Arbitration is a contractual proceeding by which the parties, to obtain a speedy and inexpensive final disposition of disputed matters, consent to submit their controversy to an arbitrator for resolution. *See In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605 (Tex. App.—El Paso 2005, no pet.). A party seeking to compel arbitration must establish: (1) there is a valid arbitration agreement; and (2) the claims raised fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005).

The FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005). Commerce is broadly construed and encompasses contracts relating to interstate commerce among the several states. *See In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 879–80

reporter's record pursuant to Texas Rule of Appellate Procedure 34.2. *See* Tex. R. App. P. 34.2 (providing that "[b]y written stipulation filed with the trial court clerk, the parties may agree on the contents of the appellate record"). Because Romo refused to so stipulate, the transcription did not become part of the appellate record. However, based on the communications between the parties in the supplemental record, it appears the parties agree that the transcription of the hearing is not necessary to the resolution of the appeal, as neither party presented any evidence at the hearing.

(Tex. App.—El Paso 2005, no pet.) (recognizing that the existence of interstate commerce may be shown in a variety of ways, including "transportation of materials across state lines").

If a party establishes that the agreement is governed by the FAA and the opposing party does not dispute it, the trial court is obliged to compel arbitration unless a specific exception applies. *In re Border Steel, Inc*., 229 S.W.3d 825, 830 (Tex. App.—El Paso 2007, no pet.) ("absent certain exceptions not applicable to this proceeding, the FAA applies to all suits in state or federal court, when the dispute concerns a 'contract evidencing a transaction involving commerce'") (citing *Jack B. Anglin Co. v. Tipp*s, 842 S.W.2d 266, 269–70 (Tex.1992)). Section 1 of the FAA provides an exception for employment of "workers engaged in foreign or interstate commerce." 9 U.S.C.A. § 1 ("nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce").

The United States Supreme Court recently explained that this "transportation worker" exemption covers a worker "who is 'actively' 'engaged in [the] transportation' of goods across borders via the channels of foreign or interstate commerce." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)). The Court clarified that the focus is on the type of work performed by the worker, "rather than the industry of the [worker's] employer." *Id.* at 253–54. However, the worker "must at least play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 256 (citing *Saxon*, 596 U.S. at 458). According to the Court, these requirements were intended to "undermine[] any attempt to give [Section 1] a sweeping, open-ended construction, instead limiting [Section 1] to its appropriately 'narrow' scope." *Id*. (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001)).

The party seeking the exemption bears the burden of proving he is a transportation worker engaged in interstate commerce within the meaning of section 1. *See Energy Transfer LP v. Moock*, No. 14-23-00858-CV, 2025 WL 1559841, at *3 (Tex. App.—Houston [14th Dist.] June 3, 2025, no pet.) (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

In resolving a motion to compel arbitration, a trial court "summarily decide[s] whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations." *See Tipps*, 842 S.W.2d at 269. This summary procedure is essentially the same procedure used in resolving a motion for partial summary judgment and is "subject to the same evidentiary standards." *See Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied) (quoting *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208 (Tex. App.—El Paso 2004, orig. proceeding)). Under this procedure, "the trial court, as well as this court, must accept as true the clear, direct, and positive evidence of an undisputed affidavit." *Tipps*, 842 S.W.2d at 269–70.

## IV. STANDARD OF REVIEW

In determining whether a trial court erred in denying a motion to compel arbitration, we apply an abuse-of-discretion standard. *See Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles. *Lucchese, Inc. v. Rodriguez*, 388 S.W.3d 354, 361 (Tex. App.—El Paso 2012, no pet.). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Thus, although we defer to the trial court's factual determinations if they are supported by the evidence, we review the court's legal rulings *de novo*. *See Henry*, 551 S.W.3d at 115.

We review "the trial court's decision denying a motion to compel arbitration in light of the grounds presented in the trial court by the party resisting arbitration." *Ridge Nat. Res., L.L.C. v.*

*Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.) (citing *Cardwell v. Whataburger Rests., L.L.C.*, 484 S.W.3d 426, 428 (Tex. 2016) (per curiam)). We may uphold the trial court's decision on any appropriate legal theory urged below. *See F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, 657 S.W.3d 623, 629 (Tex. App.—El Paso 2022, no pet.).

## V. DOES THE TRANSPORTATION WORKER EXEMPTION APPLY?

In the trial court, Romo's primary argument against enforcement of the arbitration agreement centered on his contention that he was a transportation worker engaged in interstate commerce and was therefore exempt from the FAA's enforcement provisions.

The parties' agreement specified that the FAA governed the parties' agreement, that LKQ was "engaged in transactions involving interstate commerce," and that Romo's "employment involves such commerce." The parties appear to agree, as do we, that unless Romo can establish that he came within the FAA's section 1 exemption for transportation workers engaged in interstate commerce, the FAA governs the arbitration agreement and requires its enforcement. *See In re Border Steel, Inc.*, 229 S.W.3d at 830–31 (FAA applied where parties' employment contract stated that FAA applied and employer was engaged in interstate commerce).

The parties also appear to agree that Romo met the first requirement for the FAA's section 1 exemption, as he qualifies as a "transportation worker." We agree that truck drivers who transport goods are indisputably transportation workers for purposes of section 1. *See Arrow Freight Mgmt., Inc. v. Contreras*, No. 08-23-00082-CV, 2024 WL 150085, at *1–6 (Tex. App.—El Paso Jan. 12, 2024, no pet.) (mem. op.).[6]

---

[6] Romo's role in loading and unloading cargo that is in transit as he describes in his uncontroverted affidavit also qualifies him as a transportation worker under the FAA. *See, e.g.*, *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022) (recognizing that airline employees who load and unload cargo from airplanes are transportation workers for purposes of the FAA, as their work is "closely related" to transportation such "as to be practically a part of it").

At issue, however, is whether Romo was actively and directly engaged in interstate, rather than intrastate, commerce for purposes of section 1, or in other words, whether Romo "play[ed] a direct and 'necessary role in the free flow of goods' across [state] borders." *Bissonnette*, 601 U.S. at 256. Appellants contend Romo failed to meet his burden of establishing that he played such a role. According to Appellants, Romo's affidavit—which was the only evidence before the trial court—only supported a finding that he was involved in intrastate, rather than interstate, commerce.[7] Appellants find it significant that Romo's affidavit only stated that he drove a truck between LKQ's warehouses but did not identify where those warehouses were located, or more particularly, whether any of the warehouses were located outside of Texas. It is therefore "impossible to determine whether Romo's work involves interstate transportation," they contend, as opposed to "merely local, intrastate movement between facilities in Texas—without knowing where he actually drives." According to Appellants, the trial court therefore had no basis upon which to conclude Romo was engaged in interstate commerce within the meaning of section 1. We disagree.

It is well established that a transportation worker need not physically transport goods across state lines in order to be actively engaged in the direct movement of goods across state borders within the meaning of section 1. *See, e.g.*, *Rittmann v. com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020) (section 1 of the FAA "exempts transportation workers who are engaged in the movement of goods in interstate commerce, even if they do not cross state lines"); *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 558 (3d Cir. 2023), *as amended* (May 4, 2023), *cert. denied*, 144 S. Ct. 566, 217 L. Ed. 2d

---

[7] Appellants urge us not to consider any statements made by Romo's attorney in her trial court pleadings or appellate briefing that would tend to supplement his affidavit with respect to the nature of Romo's work. We don't. Our focus is solely on whether the factual averments in Romo's affidavit are sufficient to support the trial court's judgment.

301 (2024) (recognizing that "[a] class of workers that does not regularly cross state lines will qualify if their work is 'so closely related' to interstate commerce 'as to be in practical effect part of it'"); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020) (Section 1 of the FAA applies to transportation workers who transport goods or people within the flow of interstate commerce, regardless of whether workers physically cross state lines); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021) (in analyzing whether the transportation worker exemption applies, it does not matter if the worker himself crosses state lines). Even the United States Supreme Court has recognized that airline employees who do not drive either within a state or across state lines, but who load and unload cargo that is in transit to other states, are engaged in interstate commerce for the purposes of section 1. *Saxon*, 596 U.S. 450, 457.

The key question is whether the transportation worker "is a 'constituent part' of the interstate movement of goods or people rather than a 'part of an independent and contingent intrastate transaction.'" *Adler v. Gruma Corp.*, 135 F.4th 55, 67 (3d Cir. 2025) (quoting *Singh*, 67 F.4th at 558); *see also Immediato v. Postmates, Inc.*, 54 F.4th 67, 77 (1st Cir. 2022) (recognizing same). If the transportation worker is a constituent part of that movement, he is "engaged in foreign or interstate commerce" within the meaning of section 1, "even if [he is] responsible for only an intrastate leg of that movement."[8] *Immediato*, 54 F.4th at 77. Thus, a court should consider whether a driver's "intrastate route formed a constituent part of the goods' interstate journey or an entirely separate local transaction." *See Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 761 (10th Cir. 2024).[9]

---

[8] As the First Circuit has recognized, when the FAA was first passed in 1925, "workers moving goods or people destined for, or coming from, other states—even if the workers were responsible only for an *intrastate leg of that interstate journey*—were understood to be 'engaged in interstate commerce.'" *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 22 (1st Cir. 2020) (emphasis added).

[9] In contrast, courts generally agree that taxi, Uber, and Lyft drivers are not a constituent part of the movement of goods or passengers in interstate commerce within the meaning of section 1, even when picking up passengers at an airport or train station, as they are primarily responsible for delivering passengers locally. *See Cunningham v. Lyft, Inc.*, 17 F.4th 244, 251 (1st Cir. 2021) (recognizing that Lyft drivers who primarily transport passengers locally to and

In terms of workers who transport cargo, courts have recognized that when goods are delivered from out of state but "come to rest" in a local warehouse to be distributed locally, the goods are no longer considered to be in interstate commerce; once unloaded, "anyone interacting with those goods [is] no longer engaged in interstate commerce." *See Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022); *see also Rittmann*, 971 F.3d at 915–16 (if goods are delivered to a local warehouse, where they "come to rest," and are thereafter intended for local delivery only, the local delivery driver cannot be considered a constituent part of the flow of goods across state borders); *Immediato*, 54 F.4th at 76 (recognizing that once an interstate shipment arrives at a local retailer and is "there held solely for local disposition and use," the goods are no longer considered to be "in interstate commerce"). However, when drivers transport goods that do not "come to rest" locally and are destined to be delivered to other states, the drivers are "part of a continuous interstate transportation" and are therefore engaged in interstate commerce for section 1 purposes —even if the driver only transports the goods wholly within one state. Thus, in *Rittmann*, the court recognized that Amazon drivers who delivered packages to local Amazon warehouses were engaging in interstate commerce for purposes of section 1 despite not physically crossing state lines because the packages did not "come to rest" at the warehouses to be held for local sales; the drivers were part of a larger "process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys." *See Rittmann*, 971 F.3d at 916; *see also Brock*, 121 F.4th at 764 (where products were unloaded at a warehouse but did not "come to rest" there, the warehouse drop-off was "simply part of a process by which a delivery

---

from airport are not among a class of workers engaged primarily in interstate commerce within the meaning of section 1 of the FAA); *United States v. Yellow Cab Co.*, 332 U.S. 218, 231 (1947), overruled on other grounds by *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) (holding that "local taxicab drivers who convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service [are] not an integral part of interstate transportation"); *Singh*, 67 F.4th 550, 555 (3rd Cir. 2003) (concluding that individuals who drove for Uber were predominantly local, intrastate transporters).

provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys").

Here, Romo's uncontroverted affidavit demonstrated that he transports auto parts between warehouses and loads and unloads those products while they are still in the course of their ongoing interstate journey. Therefore, contrary to Appellants' argument, it does not matter where those warehouses are located, as Romo made it clear that the auto parts did not "come to rest" in the warehouses. Instead, they were in the process of being shipped to other states, such as New Mexico and Arizona. Nor does it matter that Romo may not have been the person who actually transported the goods out of state or that he may not have driven any "interstate legs" of the products' journey, as his affidavit clearly established he was nevertheless a constituent part of a stream of interstate commerce. *See Waithaka*, 966 F.3d at 22.

Thus, just like the Amazon driver who may only drive an intrastate route while transporting goods destined to cross state borders, or the airline cargo handler who loads and unloads products that are in transit to other states, Romo's affidavit established he was an integral part of the process by which the auto parts were being shipped from Texas to neighboring states. In the absence of any evidence to the contrary, the trial court was required to accept Romo's affidavit as true. *Tipps*, 842 S.W.2d at 269–70.

Accordingly, we conclude that the trial court did not abuse its discretion by impliedly finding that, at the time of his accident, Romo was employed as a transportation worker who was engaged in interstate commerce for purposes of section 1, and he was therefore in a class of workers who are exempt from the FAA.

When the FAA is found to be inapplicable to the parties' arbitration agreement, such as when the section 1 exemption applies, some federal courts have considered whether the arbitration

agreement may be enforceable under the state's arbitration laws. *See, e.g.*, *Shanks v. Swift Transp. Co. Inc.*, 2008 WL 2513056, at *4 (S.D. Tex. June 19, 2008) ("While the FAA does not require arbitration, the question remains whether the exemption of Section 1 operates as a form of reverse preemption, so as to prohibit arbitration of the dispute altogether. Plainly, it does not. The weight of authority shows that even if the FAA is inapplicable, state arbitration law governs."). But here, even though Romo goes on to argue, as he did in the trial court, that if the FAA is inapplicable, we should apply the TAA and affirm the trial court's ruling because he was not given the opportunity to seek counsel, nor did counsel for the parties sign the agreement, we do not entertain the point because it is not a point of error brought by Appellants. Instead, they maintain the TAA is inapplicable because the parties agreed that the FAA governs.[10] And Appellants do not seek enforcement of the agreement under any other state law theory.[11]

Because we have concluded that the arbitration agreement is not enforceable under the FAA and Appellants have failed to identify any other basis for enforcing the agreement, we conclude that the trial court did not err in denying their motion to compel arbitration.

Appellants' sole issue on appeal is overruled.

## VI. CONCLUSION

We affirm the trial court's order denying the motion to compel arbitration and remand to the trial court to conduct further proceedings in accordance with our opinion.

---

[10] Appellants further point out that the Texas Supreme Court has held that because the TAA's attorney-signature requirement adds an "additional requirement" not found in the FAA—and therefore interferes with the agreement's enforceability under the FAA—this provision in the TAA is preempted by the FAA. *See, e.g.*, *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005).

[11] As set forth above, the parties' arbitration agreement provides that to the extent the FAA is inapplicable, then "Texas common law shall apply." However, Appellants do not address how the application of "Texas common law" would affect the enforceability of the agreement. And they have not made any argument in their appellate briefing to suggest that the trial court erred by not applying Texas common law in determining the agreement's enforceability.

LISA J. SOTO, Justice

October 31, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.